CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **K'DARIUS WEST,** | ) |
| Plaintiff, | ) Case No. 7:23CV00592 |
| v. | ) **OPINION AND ORDER** |
| **OFFICER DOUG BRANHAM, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*K'Darius West, Pro Se Plaintiff; Nathan H. Schnetzler, FRITH ANDERSON + PEAKE, P.C., Roanoke, Virginia, for Defendant Branham; Cassandra E. Sheehan and Debra M. Bryan, OFFICE OF ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, CORRECTIONAL LITIGATION SECTION, Richmond, Virginia, for remaining Defendants.*

K'Darius West, a Virginia inmate proceeding pro se, filed this action under 42 U.S.C. § 1983, alleging that the defendant correctional officers used excessive force against him or failed to protect him from such injury. Cross motions have been filed by the parties, which have fully briefed. After careful review of the record, the motions are resolved in this Opinion and Order.

I. BACKGROUND.

West alleges the following facts. During all times related to this case, West was confined at Red Onion State Prison (Red Onion), a maximum-security prison operated by the Virginia Department of Corrections (VDOC). On June 1, 2023, at

approximately 9:23 a.m., West "was placed in handcuff[s] and Defendant [Doug] Branham slammed [his] head into the floor, multiple times, stuck his fingers into [West's] eyes and repeatedly punched [him] in [his] head causing [West] injuries to [his] neck, head, eyes and face and hand." Compl. 2–3, ECF No. 1.[1] West alleges that since this encounter, his "vision has deteriorated," he "constantly get[s] migrain[e] headaches," "get[s] dizzy when walking," has "nightmares about the incident and suffer[s] from extreme paranoia." *Id.* at 3.

West alleges that defendant Austin Bentley "participated and did not try to stop" Branham's use of excessive force. *Id.* West informed the following defendants about the incident after the fact: Major Christopher King; Warden Rick White, Paul Haymes, VDOC Director of Investigations; and Gregory Holloway, Western Regional Director. West complains that none of them has "taken any measures to address the incident," although it was recorded by surveillance and body cameras. *Id.* Investigators from the special investigations unit took photographs of West's injuries that are in the record. After the incident, unspecified staff wrote "a false charge" against West, allegedly because he told officers he would "write them up." *Id.*

Liberally construed, West's submissions assert the following claims for relief:

---

[1] I note that any reference to page numbers to documents in the court's record will refer to the page numbers assigned by the court's electronic filing system.

1. Defendant Branham used excessive force against West during their encounter on June 1, 2023, in violation of West's Eighth Amendment rights;

2. Defendant Austin W. Bentley failed to intervene to stop Branham's use of excessive force against West on June 1, 2023;

3. Defendants Warden Rick White, Major Christopher King, VDOC Director of Investigations Paul Haymes, and VDOC Regional Director Gregory Holloway, through their inaction after West reported the incident to them, tacitly authorized the use of such constitutional violations; and

4. In retaliation for West's promise to "write them up," staff brought a disciplinary charge against him after the June 1, 2023, incident.

As relief, West seeks monetary, declaratory, and injunctive relief.[2]

Defendants Bentley, Haymes, Holloway, King, and White have filed a Motion for Summary Judgment, supported by an Affidavit from Bentley. Defendant Branham, through separate counsel, has also filed a Motion for Summary Judgment, supported by his declaration and video footage from his body camera.

After several extensions, the court granted West until July 31, 2024, to respond to the defendants' motions, and stated that "no further extension of time will be granted except on a showing of exceptional circumstances." Order, ECF No. 47. West did not comply, but November 4, 2024, filed pleadings that the court construed

---

[2] Specifically, West demands injunctive relief ordering defendants to provide him with "proper medical and mental health care" of an unspecified nature and to terminate Branham and Bentley from their jobs. Compl. 5, ECF No. 1. West is advised that such termination from employment is not a form of relief available under § 1983.

and docketed as a Motion to Amend and a Motion for a Preliminary Injunction, ECF Nos. 52, 53, with numerous exhibits. West also alleged that his delay in pursuing his case was excusable because he is not an attorney and does not have access to a legal advisor or a "decent law library," and "because of the illness caused by the incident."[3] Mot., ECF No. 52-2.

The other defendants filed motions to dismiss for failure to prosecute, arguing that West had not responded to their summary judgment motion.

II. Discussion.

A. Motions to Dismiss for Failure to Prosecute.

The defendants argue that I should dismiss West's case under Rule 41(b) of the Federal Rules of Civil Procedure, which provides, in part, that a litigant's failure "to prosecute or to comply with [the rules of civil procedure] or a court order" constitutes grounds for dismissal. Fed. R. Civ. P. 41(b). "[T]o insure that sanctions be fixed in proportion to the severity of a party's or lawyer's misconduct," courts must consider a four-factor analysis before dismissing a case for failure to prosecute: "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a drawn out history of deliberately

---

[3] West alleges that he suffered "injuries to [his] neck, head, eyes and face and hand," impaired vision, migraines, dizziness, and nightmares. Compl. 3, ECF No. 1I. He does not describe symptoms from any of these maladies that prevented him from filing his responses to the defendants' summary judgments sooner.

proceeding in a dilatory fashion, and (4) the existence of sanctions less drastic than dismissal" with prejudice. *Doyle v. Murray*, 938 F.2d 33, 34 (4th Cir. 1991).[4]

Under this standard, I do not find it appropriate to grant the motions to dismiss West's case for failure to prosecute. Without question, West did not timely file any response to the defendants' summary judgment motions, after being warned that failure to do so would result in dismissal. West also knew how to move for extensions of time but failed to do so regarding the court's final response deadline of July 31, 2024. As for the second *Doyle* factor, the defendants have not demonstrated prejudice stemming from West's delay of three months in responding to their summary judgment motions.

However, as a sanction for West's delays, I will deny West's Motion to Amend to the extent that it seeks to add new defendants or claims and thereby seeks to delay the case further. It appears that West did not intend this submission to serve as an Amended Complaint, but merely to add the new director of VDOC and the Commonwealth as defendants, and to raise additional claims of "gross negligence," "intentional infliction of emotional distress and physical harm do [sic] to ministerial neglect and being that the 14th Amendment the protection of equal rights. Protection

---

[4] I have omitted citations, internal quotation marks, and/or alterations here and throughout this Opinion and Order, unless otherwise noted.

of life, freedom and liberty," and "defamation of character." Mot. Amend. 2, 3, ECF No. 52. I further find that the purported amendments West presents are futile.

### B. The Summary Judgment Motions.

The Federal Rules of Civil Procedure provide that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To preclude summary judgment, a nonmovant must present a "genuine" dispute as to a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The record shows that on June 1, 2023, Branham and Bentley were sergeants on duty at Red Onion. At approximately 9:20 a.m., officers in A-6 pod were preparing to take inmates on the top tier in the A-6 pod for outside recreation, as documented in Incident Report ROSP02023000092. Mem. Supp. Mot. Summ. J. Bentley Aff. ¶ 5, ECF No. 27-1, and Enclosure A, ECF No. 44-1. Some of six inmates who had been released from their cells, including West, began fighting. The control booth officer saw the fighting and announced a 10-18 alert (fight between inmates) in A-6 pod. The booth officer ordered the inmates to stop fighting and lay on the ground. After she twice deployed chemical munitions, they did so. Branham and Bentley both went to A-6 pod to assist in regaining control there.

When Branham arrived in A-6 pod, as reflected by the video footage from his body camera, he helped to direct several inmates back into their cells. He encountered West, who was lying on the ground. West refused to comply with Branham's orders to stand up until the third order. West, who was not handcuffed, then began cursing at Branham and threatening the officer. After West got to his feet, he continued his threats. Branham ordered West twice to turn around, and instead of doing so, West struck him in the chest. Branham "tried to gain control of West by placing a hand on him to turn him around to face the wall, but West pulled away." Mem. Supp. Mot. Summ. J. Ex. A, Branham Aff. ¶ 8, ECF No. 30-1. The inmate, Branham, and other officers "went to the ground," with the officers working together to restrain West. *Id.* at ¶ 9. At some point during this encounter, West struck Branham on the right side of his face. West continued to be resistive and threatened to kill the officers. Branham denies that he put his fingers into West's eyes or punched or kicked him. After the incident, Branham received medical treatment for injuries from West's assaults on him. Bentley Aff. Enclosure A at 5, ECF No. 44-1.

Bentley states that he was not present in A-6 pod when Branham and others used hands-on physical force to gain control of West and restrain him. Bentley reports that West was already restrained when he arrived at the scene and that he and another Sergeant escorted West from the top tier and into the vestibule. During this

process, Bentley reports that West was "assaultive and attempted to turn and pull away" from the officers. Bentley Aff. ¶ 8, ECF No. 44-1. The officers "placed West on the vestibule wall to maintain control" over him, put him in a wheelchair, and escorted him to the medical department for assessment. *Id.* According to the incident report attached to Bentley's Affidavit, medical staff noted that West had a laceration above the left eyebrow that required four stitches and a smaller laceration on his inner lower lip, with no other visible injuries.

Only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). But not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. *Id.* at 9. In analyzing an excessive force claim, the court has a two-fold inquiry: first, subjectively, whether the officer applied force "in a good[-]faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"; and second, whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 6, 8.

On the objective prong, the court inquires whether the plaintiff showed more than "de minimis uses of physical force" by the defendant. *Id.* at 10. Thus, the "core judicial inquiry [is] . . . the nature of the force — specifically, whether it was

nontrivial and was applied . . . maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).

The subjective prong of this standard is a higher bar, whether the defendant had the required state of mind — "wantonness in the infliction of pain," rather than simply making a good faith effort to restore safety and compliance with rules and orders. *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). In considering this issue, the court must evaluate these factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* at 116.

Prison officials who witness another officer using excessive force may be liable under § 1983 for failing to intervene. "To succeed on a theory of bystander liability," the plaintiff must show that the defendant "(1) knew that a fellow officer was violating [his] constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014). On the other hand, prison officials must be granted broad deference in tactics chosen to control potentially dangerous inmates. *Hudson*, 503 U.S. at 6.

As an initial matter, it is undisputed that West suffered injuries that required medical care. Moreover, the video footage reflects that officers used more than de minimis force in bringing West under control and restraining him. Therefore, I conclude that the objective prong of the use of force standard is satisfied by evidence in the record.

I cannot draw the same conclusion as to the subjective prong. As Branham contends, he entered the pod at a time when restoring safety and order was paramount — after a multi-inmate fight. While other inmates followed officers' directions to stand and reenter their cells, West failed to comply with multiple orders, cursed and threatened the officers, struck Branham twice, and continued to resist officers' efforts to handcuff him. Thus, I agree that Branham and the other officers reasonably perceived that West posed a threat that warranted some use of force to restore order and discipline by persuading West to comply with orders and be handcuffed.

I find material disputes of fact as to the second and fourth prongs of the subjective facet of the excessive force standard. Branham would like me to find the video footage definitive that the only force used was reasonable in a good faith effort to restore order. But I do not find that footage to be definitive on the relationship between the need and the amount or type of force used or efforts to temper the force.

The video footage from Branham's body camera that day shows West cursing and threatening Branham and failing to comply with Branham's orders to stand up and turn around.  In much of the video, however, it is difficult to decipher what is happening, from the angle of the body camera and with so many officers involved.  Also, for reasons not definitively shown in the footage, the video goes black for several seconds, with the audio continuing to record West threatening to sue and yelling that he is already handcuffed and that someone is kicking him, and Branham claiming to be unable to get up.  Branham states that the camera fell off, but West says the officer took it off and turned it over to avoid filming.

West's Complaint is signed under penalty of perjury and states facts from West's personal knowledge.  Therefore, I must consider it as an affidavit for purposes of the summary judgment analysis.  West states that after he was placed in handcuffs (while the camera was not recording video), Branham "stuck his fingers in [West's] eyes and repeatedly punched [him]" in the head.  Compl. 3, ECF No. 1.  As stated, Branham denies these actions.  But I conclude that the parties' submissions, including the video, leave genuine issues of material fact to be resolved by the fact finder.  Therefore, I will deny Branham's summary judgment motion on the excessive force claim against him in his individual capacity.

Bentley's evidence is that he was not present when Branham and other officers used physical force against West on June 1, 2023.  Therefore, he argues, he cannot

be liable for failing to intervene. While West's Complaint asserts that Bentley "participated and did not try to stop" the others from using force, the Complaint fails to offer any facts from West's personal knowledge on which he could show that Bentley was present or participated in using force against him. *Id.* Nor does West present any evidence in response to Bentley's summary judgment motion to create a genuine and material factual dispute as to Bentley's evidence that he arrived in the pod only after West had been handcuffed. I conclude from the record that Bentley is entitled to summary judgment and will grant his motion as to bystander liability.

West does not allege that any of these four defendants was present during the encounter with Branham on June 1, 2023, or that they had any knowledge of the officers' use of force on that day until West reported it to them after the fact. King and White are administrators at Red Onion, while Haymes and Holloway are VDOC administrators. None of them bears a job title indicating personal involvement with maintaining day-to-day control over inmates in their housing areas, nor does West allege facts showing otherwise.

It is well established that supervisory or administrative officials cannot be held automatically liable for constitutional violations of their employees. Liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights. *Wilcox v. Brown*, 877 F.3d 161, 170

(4th Cir. 2017). "The doctrine of respondeat superior has no application under this section." *Id.*

West also fails to state any claim against these defendants based on their supervisory roles. To state a claim of supervisory liability, a complaint must allege facts that demonstrate (1) that the supervisor knew his or her subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) that the supervisor's response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

West's Complaint fails to state any facts suggesting that King, White, Haymes, or Holloway had any knowledge that Branham, Bentley, or any other staff member posed a risk of harm to West. Thus, he also fails to show that these defendants were deliberately indifferent to, or tacitly endorsed, unconstitutional conduct by anyone, or that any action or inaction by these defendants caused the alleged violations of West's rights by Branham. Therefore, I conclude that these defendants are entitled to summary judgment as a matter of law, and I will grant their motion.

West alleges retaliation in violation of the First Amendment. "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he

engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). Merely conclusory allegations of retaliation, however, cannot suffice to state any actionable claim under § 1983. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

West's retaliation first fails because he does not state facts showing that any defendant in this lawsuit was involved in the disciplinary charge. Moreover, West's allegations that someone brought a disciplinary charge against him to retaliation for his spoken intent to write complaints about officers is nothing more than conclusory. He does not even identify what the charge was, who brought the charge, whether he was convicted, or if so, how he was penalized. Thus, his allegations are not sufficient to state a retaliation claim against anyone or to warrant further factual development. I will grant the defendants' motions as to the retaliation claim.

Finally, I must deny West's motion seeking interlocutory injunctive relief and a mandamus. Briefly summarized, this motion alleges that West is "constantly being threaten[ed] and racially harassed for the current pending lawsuit." Mot. Prel. Inj. 1, ECF No. 53. He also states that he fears retaliation, "life threatening injuries and extremely high chance of the deprivation of life or liberty and rights." *Id.* at 2. As relief, he asks for a court order directing his transfer to Lawrenceville Correctional

Center (LVCC).  Apparently in addition or in the alternative, he seeks a writ of mandamus ordering defendants to issue an "emergency transfer out of the Western Region" and to have all defendants stay away from West.  *Id.* at 3.

A party seeking a preliminary injunction must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  West meets none of these factors.  His vague fears of retaliation, threats, or other harm are not based in any facts about any recent action by the defendants or anyone else at Red Onion.  Thus, he fails to show likelihood of success on the merits of these claims or any likelihood that he will suffer irreparable harm in the absence of court intervention.  Moreover, the public interest is not served by courts interfering with the decisions of prison administrators who determine where inmates should appropriately and safely be confined.  West also fails to allege that he has sought relief from officials based on any of his fears, such as by utilizing the grievance procedures or asking a counselor about applying for a transfer.  Thus, he fails to show that he has no other remedy besides the extraordinary relief he seeks here.

For similar reasons, I must also deny West's request for a mandamus directing prison officials to transfer him.  This court does not have jurisdiction to grant

mandamus relief against state officials. *Gurley v. Superior Ct. of Mecklenburg Cnty.*, 411 F.2d 586, 587 (4th Cir. 1969).

### III. Conclusion.

For the reasons stated, it is hereby **ORDERED** as follows:

1. The Motions to Dismiss, based on West's failure to prosecute, ECF Nos. 50 and 54, are DENIED.

2. West's Motion to Amend and Motion for Preliminary Injunction and Mandamus, ECF Nos. 52 and 53, are DENIED.

3. The Motion for Summary Judgment, ECF No. 26, filed by defendants Bentley, Haymes, Holloway, King, and White, is GRANTED and those parties shall be terminated by the Clerk on the docket.

4. The Motion for Summary Judgment by defendant Branham, ECF No. 29, is GRANTED IN PART AND DENIED IN PART; the motion is GRANTED as to the retaliation claim and claims against Branham in his official capacity, but it is DENIED as to the excessive force claim against him in his individual capacity, and the Clerk is DIRECTED to schedule this matter for a jury trial at the United States District Courthouse in Abingdon, Virginia, solely as to the claim that defendant Branham used excessive force against West during the incident on June 1, 2023.

5. In preparation for trial, West's request to have all video footage related to the June 1, 2023, incident at issue is GRANTED, and the defendants are DIRECTED to certify to the court that West has been provided an opportunity to view all such video and to provide user-friendly copies of that video footage to the Court within forty-five days from the entry of this Opinion and Order.

ENTER: March 31, 2025

/s/ James P. Jones
Senior United States District Judge